BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Criminal Appeals Section
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701

     1000 U.S. Courthouse
     312 N. Spring Street
     Los Angeles, CA 90012

     Telephone:  (714) 338-3598/(213) 894-2432
     Facsimile:  (714) 338-3708/(213) 894-8513
     Email:     Brett.Sagel@usdoj.gov
            Ranee.Katzenstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>        v.<br><br>MICHAEL JOHN AVENATTI,<br><br>     Defendant. | SA CR No. 19-061-JVS<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM (CR 1211); MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS<br><br>SENTENCING HEARING:<br>Date: May 27, 2025<br>Time: 9:00 a.m. |

     Plaintiff, United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel and Ranee A. Katzenstein, hereby files its response to defendant's sentencing memorandum (CR 1211).

The government's response is based upon the attached memorandum of points and authorities; the attached declaration and exhibits thereto; the files and records in this case, including the evidence and testimony at trial as well as the evidence, briefing, and hearing for defendant's initial sentencing; and such further evidence and argument as the Court may permit at the sentencing hearing.

Dated: May 16, 2025                    Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division


                                    _____/s/_____
                                    BRETT A. SAGEL
                                    RANEE A. KATZENSTEIN
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

2

## **TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

MEMORANDUM OF POINTS AND AUTHORITIES.................................2

I.    INTRODUCTION...................................................2

II.   RESPONSES TO DEFENDANT'S ARGUMENTS............................2

      A.    Post-Sentencing Rehabilitation..........................2

      B.    Sentencing Disparity....................................4

      C.    Defendant's Objections to the Sentencing Guidelines.......4

            1.    Loss..............................................4

            2.    Obstruction of Justice............................7

            3.    Misrepresentation in Bankruptcy Proceedings.........11

            4.    Acceptance of Responsibility......................12

III.  CONCLUSION....................................................12

# TABLE OF AUTHORITIES

Page(s)

Cases

Bronston v. United States,
  409 U.S. 352 (1973) ............................................... 8

Pepper v. United States,
  562 U.S. 476 (2011) ............................................... 3

United States v. Ajugwo,
  82 F.3d 925 (9th Cir. 1996) ...................................... 5

United States v. Barnes,
  993 F.2d 680 (9th Cir. 1993) ..................................... 5

United States v. Camper,
  384 F.3d 1073 (9th Cir. 2004) ................................. 8, 10

United States v. Charlesworth,
  217 F.3d 1155 (9th Cir. 2000) .................................... 5

United States v. Jones,
  482 F.Supp.3d 969 (N.D. Cal 2020) ................................ 3

United States v. Miller,
  953 F.3d 1095 (9th Cir. 2010) .................................... 4

United States v. Rizk,
  660 F.3d 1125 (9th Cir. 2011) .................................... 5

United States v. Rogers,
  321 F.3d 1226 (9th Cir. 2003) .................................... 9

United States v. Taylor,
  749 F.3d 842 (9th Cir. 2003) ..................................... 9

United States v. Treadwell,
  593 F.3d 990 (9th Cir. 2010) ..................................... 4

Statutes

18 U.S.C. § 3582(c) ................................................ 2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant only acknowledges his criminal conduct in portions of just two sentences: "[defendant] violated his duties towards his clients" and "he hurt the former clients he was entrusted to help." (CR 1211 at 1, 7.)[1]  Although defendant may ignore and minimize his offenses, his years-long, egregious criminal conduct, against individuals, the IRS, and others, establishes that nothing in defendant's latest filing provides a basis for any leniency. Defendant focuses on his post-sentencing rehabilitation but, even if true, it is only one factor for the Court to consider, and it hardly justifies any further reduction in sentence.  And defendant's other post-sentencing conduct -- highlighted in the government's re-sentencing brief -- shows that defendant has hardly changed for the better.  Defendant's factual and legal objections to the Sentencing Guidelines and restitution in this matter are also without merit.

### II.    RESPONSES TO DEFENDANT'S ARGUMENTS

####     A.    Post-Sentencing Rehabilitation

Relying on a district court opinion on a compassionate release motion -- during the COVID pandemic -- pursuant to 18 U.S.C. § 3582(c), defendant claims "[p]ost-sentencing rehabilitation is a 'critical factor'" in determining an appropriate sentence.  (CR 1211 at 2 (quoting United States v. Jones, 482 F.Supp.3d 969, 983 (N.D. Cal 2020).)  Although the Supreme Court has clearly stated that "postsentencing rehabilitation may be highly relevant to several of

---

[1] Defendant even has a Section Header that includes "The Nature and Circumstances of the Offense" (CR 1211 at 2), yet includes nothing on either the nature or circumstances of his offenses.

2

the § 3553(a) factors," <u>Pepper v. United States</u>, 562 U.S. 476, 491 (2011), it is simply one factor for a re-sentencing court to consider.  Defendant claims he has used this case "for personal growth" and "to show that his remorse and concern for others are real, not through his words, but through his actions while in custody," so that he can return "to his core purpose of using his talents to help others." (CR 1211 at 3, 7.)  Hopefully, defendant will use his incarceration as an opportunity for growth but, unfortunately, the Court can't trust defendant to do what he says and, in any case, any rehabilitation, if real, should not outweigh all other factors under Section 3553(a).

First, everything before this Court, demonstrates that, for years, defendant's "core purpose" has been to help himself. Defendant's theft from vulnerable clients, his failure to pay taxes, his repeated lies, including under oath, his failure to pay child support, demonstrate who -- himself -- he was looking to help. Second, the characteristics defendant wants the Court to focus on regarding his purported rehabilitation, including his "concern for others," were on full display in this case as highlighted by each of the victims' statements and defendant's scheme to defraud them. Defendant made Johnson, Gardner, Barela, and Phan each believe that defendant cared for their plight, was fighting for them, was available to help them with anything they needed; but this concern was a sham.  Defendant lied to them, stole from them, and attacked them.  Defendant has always had the ability to show compassion and concern for others when it would help him, which is exactly what he is doing now.  As defendant's testimony in various depositions makes clear, defendant has not demonstrated any growth, is not remorseful,

3

1  and is the same person that the Court sentenced in December 2022.

2  (CR 1214 Re-Sent. Exs. 3-6; see also Re-Sent. Ex. 9 (defendant

3  attacking in 2024 his former client, Stephanie Clifford, who he was

4  convicted of defrauding).)

5  **B.  Sentencing Disparity**

6  Using a selective list of other fraud cases, which are easily

7  distinguishable from the present case, and generic information from

8  the Sentencing Commission, defendant claims the Court should depart

9  downward to impose his requested sentence.  (CR 1211 at 7.)  The

10  Ninth Circuit has already rejected defendant's flawed approach and

11  argument: another "defendant convicted at a different time of a

12  different fraud" being sentenced to a shorter term "does not create

13  an 'unwarranted' sentencing disparity."  United States v. Treadwell,

14  593 F.3d 990, 1011-12 (9th Cir. 2010)[2] ("[T]he Sentencing Commission

15  has expressly concluded that in the case of fraud, loss serves as a

16  measure of the seriousness of the offense and the defendant's

17  relative culpability and is a principal factor in determining the

18  offense level under § 2B1.1.") (internal quotation omitted).

19  **C.  Defendant's Objections to the Sentencing Guidelines**

20  1.  <u>Loss</u>[3]

21  Based on factually and legally flawed claims, defendant, without

22  factual support or specificity, argues that the loss should be

23  between $1,500,000 and $3,500,000.  (CR 1211 at 9-12.)  As an initial

24  matter, the government has met its burden to establish the 18-level

25

26  [2] Overruled on other grounds by United States v. Miller, 953
F.3d 1095 (9th Cir. 2010).

27

28  [3] Defendant's challenges to the restitution calculations are
without merit and the Court should order restitution as previously
requested.  (CR 1214 at 21-22.)

4

loss enhancement, and defendant bears the burden of proof that credits apply reducing this loss amount, which he has failed to do -- or even attempt.  See United States v. Charlesworth, 217 F.3d 1155, 1158 (9th Cir. 2000) (finding that the government has the burden of proof by preponderance of the evidence to establish an enhancement, but once the government has met its burden, the burden falls on defendant to alter this level); see also United States v. Ajugwo, 82 F.3d 925, 929 (9th Cir. 1996); United States v. Barnes, 993 F.2d 680, 683 (9th Cir. 1993).  For the reasons set forth in the government's re-sentencing memorandum (CR 1214 at 14-21) and the Revised Presentence Report ("RPSR") (RPSR ¶¶ 126-137), the Court should determine the loss is between $3,500,000 and $9,500,000.[4]

### a.  Michelle Phan

Both Michelle Phan and Long Tran testified that defendant stole $4 million of Phan's settlement after he received his full fee, which is consistent with the evidence before this Court, all of which supports a loss of $4 million related to Phan.  The Ninth Circuit remanded for the Court to determine the value of EM Cosmetics for restitution purposes (Mem. Dispo. at 5-6), but regardless, defendant provides no evidence supporting any reduction in loss for the value of EM Cosmetics or any other items of value defendant claims he provided Phan.[5]  Defendant attempts to improperly shift the burden to

---

[4] Acknowledging that the Ninth Circuit opinion rejected any inclusion of payments he made to his victims before receiving the settlement funds as offsets, defendant nonetheless claims this money should not be included in the loss calculations.  (CR 1211 at 12.) Only the money defendant stole from the settlement payments minus the appropriate offsets is included in the loss calculations; the restitution amounts, however, deduct these pre-settlement payments.

[5] Defendant attaches numerous documents and agreements related to Phan and Ipsy (CR 1211 Exs. B-G), but none of them establish a *(footnote cont'd on next page)*

5

1  the government and claim without support that defendant provided

2  services to Phan that exceeded the $4 million he stole from her.  (CR

3  1211 at 9-10.)[6]  For the reasons set forth in the government's re-

4  sentencing memorandum, the loss (and restitution) attributable to

5  Phan is $4 million.

6        *b.   Alexis Gardner and Gregory Barela*

7       Defendant raises the same claims this Court has already rejected

8  about his supposed work on other matters for Gardner and Barela and

9  the need to offset the loss for both based on his claims of

10  "significant" and "substantial" work.  (CR 1211 at 10-11.)  First,

11  defendant's fee agreements with these clients do not call for such

12  offsets, and the testimony of the witnesses, which defendant cites,

13  does not establish any actual work, let alone significant work,

14  defendant actually did.  For example, defendant cites Barela's

15  testimony to support defendant's work on Carthey v. Pirch (CR 1211 at

16  10), but Barela testified he did not even know defendant worked on

17  the matter.  (RT 8/5/21 v.2 at 29; see also CR 1000 Decl. Ex. A. at

18  109-114 (defendant's entire firm billed $944 for work on the

19  matter).)  Defendant also cites Gardner's testimony (CR 1211 at 11),

20  but Gardner specifically stated that defendant's willingness to talk

21

22

23  basis for offsets.  Defendant, however, does not include (or discuss)
    either the common stock repurchase agreement, which states that the
24  repurchase of stocks are "in connection" with the other agreements
    (Tr. Ex. 268), or final term sheets between the parties (CR 1214 Re-
25  Sent. Ex. 1) establishing the same.  Defendant completely ignores
    Phan and Tran's testimony and statements, his conduct, and his own
26  statements at his change of plea and in advance of sentencing.

    [6] In trying to justify his Rule 17(c) subpoenas, defendant
27  claimed he needed the information to be able to provide the Court
    with a valuation of EM Cosmetics based on an expert's report and an
28  evidentiary hearing (CR 1152); however, defendant's expert did not
    provide a value, and defendant never sought an evidentiary hearing.

to her was not related to her case nor would be reduced from her

settlement amount as legal fees.

Defendant asserts because the government has failed to account

for the services defendant purportedly rendered to Gardner and

Barela, the government has failed to prove the losses attributable to

them.  The government has met its burden to show the losses, and

defendant's failure to produce any evidence -- because there is none

-- to offset the loss amount does not negate the loss calculation.[7]

### 2.    Obstruction of Justice

Defendant objects to an enhancement for obstruction of justice

claiming that his statements were not false, or if false, he didn't

know they were false, or the investigation had not started when he

undertook his obstructive conduct.  (CR 1211 at 13-26.)  When looking

at defendant's statements under oath on their face, as well as the

context in which they were made (i.e., the questions to which they

respond and the evidence received by the Court of defendant's overall

conduct), the Court can easily determine, by a preponderance of

evidence, that defendant willfully made false statements under oath

that were material to both the proceedings in which he committed

perjury as well as this matter.

Defendant's arguments for why some of his statements were not

false are exercises in sophistry.  Read in the context of the

question that was asked and defendant's knowledge as a lawyer fully

engaged in the cases at issue, his claims that the statements are

---

[7] Defendant also objects to the inclusion of the nearly $300,000
loss associated with Stephanie Clifford based on additional work he
purportedly did for her.  (CR 1211 at 11-12 (citing Second Circuit
record).)  Judge Furman rejected this argument at defendant's
sentencing in that case and defendant abandoned the argument on
appeal.  (Re-Sentencing Exhibits 17-18, attached.)

merely equivocal and/or express only a state of mind or belief fail;

given the context, a preponderance of the evidence supports findings

that the statements were false.  Defendant primarily relies on

Bronston v. United States, 409 U.S. 352 (1973), to claim that some of

his answers were literally true. (CR 1211 at 13.) United States v.

Camper, 384 F.3d 1073 (9th Cir. 2004), is helpful here:

> Bronston's rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked. Different rules govern statements that are ambiguous, in which the statement may be true according to one interpretation and false according to another.  This circuit distinguishes between answers that contain some ambiguity and those that are fundamentally ambiguous. . . .
>
> On the other hand, the existence of some ambiguity in a falsely answered question is generally not inconsistent with a conviction for perjury.  <u>The context of the question and other extrinsic evidence relevant to the defendant's understanding of the question may allow the finder of fact to conclude that the defendant understood the question as the government did and, so understanding, answered falsely</u>. Ordinarily, the finder of fact decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to.

Id. at 1076 (internal citations and quotations omitted) (emphasis

added); see also United States v. Taylor, 749 F.3d 842, 1231 (9th

Cir. 2003) (upholding obstruction enhancement based on the district

court's review of the record as a whole and specific findings);

United States v. Rogers, 321 F.3d 1226, 1231 (9th Cir. 2003)

(affirming obstruction enhancement based on defendant's willful and

materially false statements in view of the record).

      The lack of merit in defendant's challenges to the obstruction

enhancement is illustrated by a few examples. Defendant contests the

following testimony during the March 22, 2019, judgment-debtor

examination ("JDE") as a basis for the enhancement:

      **Q**: Mr. Avenatti, did you steal Mr. Johnson's money?

8

**The Court:** It's a yes or no question.
**A:** Absolutely not.
**The Court:** Okay.
**Q:** Mr. Avenatti, isn't it true that beginning in July of 2015, rather than pay Mr. Johnson his share of the $4 million that he was entitled to, instead, you've been doling out small payments each month to him? Isn't that true?
**A:** That's absolutely false.

(CR 1211 at 22 (quoting Tr. Ex. 405 at 19).)  Defendant claims these "absolutely false" answers may not have been willfully false because he "could have believed—by the time of his testimony in March 2019—that he did not steal Mr. Johnson's money."  (CR 1211 at 22.) Contrary to this conjecture, defendant went directly from this JDE to Johnson's house, where defendant falsely told Johnson that the County of Los Angeles had only just finalized the settlement and fraudulently caused Johnson to sign paperwork stating that Johnson was entitled to approximately $1.9 million, thereby concealing that defendant had already taken the settlement money that had been paid out four years earlier.  Defendant also spuriously claims he could have believed he had already paid Johnson all the money due to him because defendant "was being asked the question out of the blue, four years after he had obtained the settlement agreement for Mr. Johnson."  (CR 1211 at 23.)  Defendant's multiple lies to Johnson for over four years show that defendant knew he was cheating Johnson and, in any case, his newly asserted excuse for his false statement is belied by the fact that defendant had been asked about the Johnson settlement and payment obligations seven days earlier at his first JDE.  (CR 1211 at 15-17.)[8]

_____

[8] Defendant claims his testimony at the JDE on March 15, 2022, were literally true or even if false, he may not have known he owed anything to Johnson.  (CR 1211 at 15-17.)  The context clearly
*(footnote cont'd on next page)*

9

Defendant also challenges his false testimony regarding Johnson's settlement agreement with the County, including that the matter was not resolved in its entirety and that the settlement agreement was not the final agreement. (CR 1211 at 19-21.) But the "context of the question and other extrinsic evidence relevant to the defendant's understanding of the question[s]" allow the Court to easily "conclude that the defendant understood the question[s and] answered falsely." Camper, 384 F.3d at 1076. Defendant further claims "[w]ithout seeing the document [defendant] was being handed during his testimony, the Court cannot conclude he was testifying falsely or without good-faith belief that the document was not the true settlement agreement." (CR 1211 at 21.) The Court and defendant have seen the document defendant falsely denied was the settlement agreement (Tr. Ex. 408) and know that it was in fact the settlement agreement. (Compare Tr. Exs. 408 and 37, attached as re-sentencing exhibits 19, 20.)

Defendant also disputes basing the obstruction enhancement on his false statement during the same JDE that his stream of payments to Johnson was "an advance on future settlement monies" because the statement was not in response to any questions, and it is unclear what it being discussed. (CR 1211 at 24). Not so. Defendant objected to the question, "What is this stream of payments for?"

demonstrates that when the Court overruled defendant's privilege objection to "so there is no reason for you to be paying Mr. Johnson on an ongoing basis" and told defendant "it is a 'yes' or 'no' question as to whether or not he has been paid all they money that he was owed," defendant's answer "to the best of my knowledge, yes" was willful and materially false. (CR 1211 Ex. M at 11-14.) The context and the evidence before this Court demonstrate that defendant willfully provided materially false answers as defendant lied to Johnson for years about awaiting on the County of Los Angeles and then going to Johnson's house after the JDEs to falsely claim the settlement is finally completed.

claiming "privilege," but after the Court overruled, defendant provided a materially false and willful answer: "It's an advance on future settlement monies, Your Honor."  (CR 1211 Ex. N at 23, 25.) As the evidence at trial established, Johnson's settlement money had already been paid and stolen.[9]

Defendant also contests basing the obstruction enhancement on defendant's forgery of his partner's signature on a stipulation to get the firm's bankruptcy matter dismissed, claiming that the investigation had not already started.  (CR 1211 at 14-15.)  This objection fails because the criminal investigation began in 2017, prior to defendant forging and submitting the document in the EA LLP bankruptcy proceeding.  (CR 1000, Sent. Ex. 23; RT 8/18/21 v.2 at 44-48.) Defendant further claims there is no evidence that the dismissal of the bankruptcy was related to the investigation or prosecution in this matter (CR 1211 at 14); however, the record amply supports a finding that defendant wanted the bankruptcy dismissed to more easily conceal his criminal conduct and actions.

3.    Misrepresentation in Bankruptcy Proceedings

Despite only challenging on appeal whether the fraud-during-bankruptcy-proceedings enhancement was improper because it constituted double-counting with the obstruction of justice enhancement, defendant now claims that there is no support for it other than omissions rather than false statements.  (CR 1211 at 26-28.)  This is inaccurate.  Defendant provided false information on the firm's bankruptcy forms, including affirmatively understating the

_____

[9] The Court can go through the transcript portions, included as defendant's sentencing exhibits M-P, for additional examples of defendant's willful and materially false statements for the Court to make express findings to support the enhancement.

firm's revenue and receipts.  And defendant's false statements and omissions were intentional.  Although defendant implies that he was not obligated to report receipt of settlement funds that belonged to clients on the firm's bankruptcy documents, this view is completely contradicted by defendant's treatment of those funds, including his claim that the firm had earned fees and costs from those funds (which he even now asserts offset the losses in this case), and his failure to pay the funds over to the clients.  For the reasons previously provided (CR 1023 at 11, 1214 at 8-9) and as the Court found (CR 1053 at 4-5), the Court should increase defendant's offense level for misrepresentations during bankruptcy proceedings.

### 4.   Acceptance of Responsibility

Acknowledging his argument is foreclosed by Ninth Circuit precedent, defendant still seeks a third point for acceptance based on, in part, his claim that he pleaded guilty after the mistrial saving the "government substantial expense and effort." (CR 1211 at 28-29.)  Defendant did not plead guilty until a year after the mistrial was declared in August 2021, during which time he filed motions and brought an interlocutory appeal and after he was convicted in the Clifford matter. In support of his pleas, defendant admitted only a bare minimum of his unlawful conduct. Defendant barely qualifies for the first two points for acceptance of responsibility; he certainly does not qualify for the third.

## III. CONCLUSION

For the foregoing reasons, and the reasons presented in the government's resentencing memorandum (CR 1214), the government respectfully requests that the Court impose its recommended sentence.

## DECLARATION OF BRETT A. SAGEL

I, Brett A. Sagel, declare as follows:

1.    I am an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Central District of California (the "USAO").  I, together with AUSA Ranee A. Katzenstein, am assigned to represent the government in the prosecution of defendant MICHAEL JOHN AVENATTI ("defendant") in <u>United States v. Michael John Avenatti</u>, SA CR 19-61-JVS.  I submit this declaration in support of the government's response to defendant's sentencing memorandum (CR 1211).

2.    Re-Sentencing Exhibit 17 is a true and correct copy of a letter submitted on behalf of defendant to the Second Circuit Court of Appeals on April 21, 2023, in <u>United States v. Michael Avenatti</u>, Nos. 22-1242, 22-2550.

3.    Re-Sentencing Exhibit 18 is a true and correct copy of an excerpt of the transcript for defendant's sentencing hearing in <u>United States v. Michael Avenatti</u>, 19 CR 374(JMF) (SDNY), on June 2, 2022.

4.    Re-Sentencing Exhibit 19 is a true and correct copy of Trial Exhibit 408 introduced into evidence on July 23, 2021, in this case.

5.    Re-Sentencing Exhibit 20 is a true and correct copy of Trial Exhibit 37 introduced into evidence on July 21, 2021, in this case.

///

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration is executed at Santa Ana, California, on May 16, 2025.

BRETT A. SAGEL

# RE-SENTENCING EXHIBIT 17

# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
*Executive Director*
*and Attorney-in-Chief*

*Appeals Bureau*
*Barry D. Leiwant*
*Attorney-in-Charge*

April 21, 2023

**BY CM/ECF**

Hon. Catherine O'Hagan Wolfe
Clerk
United States Court of Appeals for the Second Circuit
40 Centre Street
New York, NY 10007

**Re: *United States v. Michael Avenatti,* Nos. 22-1242, 22-2550**

Dear Ms. Wolfe:

I represent the Appellant in the above matter. I respectfully write to withdraw the argument set forth at pp. 58 through 68 of the opening brief, filed by Appellant on December 16, 2022. Specifically, Appellant no longer presses on appeal, and withdraws from the Court's consideration, the argument that, "the District Court erred in determining that the loss amount was $297,500 because the second book payment of $148,750 was returned and because the loss amount should have been reduced by the value of services Avenatti rendered to Clifford." Appellant maintains all other arguments.

Thank you.

Respectfully submitted,

cc:   Government counsel (by ECF)

# RE-SENTENCING EXHIBIT 18

M626AVIS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                            19 CR 374(JMF)
                                           Sentence

MICHAEL AVENATTI,

                Defendant.

------------------------------x

                                New York, N.Y.
                                June 2, 2022
                                10:00 a.m.
Before:

                  HON. JESSE M. FURMAN,

                                District Judge

                      APPEARANCES

DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
BY:  MATTHEW D. PODOLSKY
     ANDREW ROHRBACH
     Assistant United States Attorneys

DAVID PATTON
FEDERAL DEFENDERS OF NEW YORK, INC.
     Attorneys for Defendant
BY:  ROBERT M. BAUM
     TAMARA GIWA
     MALINI MALHOTRA

BREWSTER & DE ANGELIS, P.L.L.C.
     Attorney for Defendant Interested Party
BY:  CLARK O. BREWSTER

Also Present:
Special Agent DeLeassa Penland
Emily Abrams, USAO Paralegal
Juliet Vicari, Paralegal

M626AVIS

```
 1              (Case called)
 2              DEPUTY CLERK:  Counsel, please state your name for the
 3   record.
 4              MR. PODOLSKY:  Good morning, your Honor.
 5              Matthew Podolsky and Andrew Rohrbach for the
 6   government.  We're joined at counsel table by Special Agent
 7   DeLeassa Penland, and Emily Abrams, a paralegal with our
 8   office.
 9              THE COURT:  Good morning.
10              MR. BAUM:  Good morning, your Honor.
11              Robert M. Baum, and we have Michael Avenatti.
12              THE COURT:  Can you just speak into the microphone,
13   Mr. Baum?
14              MR. BAUM:  Thank you.  Robert M. Baum.  I don't know
15   if this is on, Judge.  Judge, you know about my technical
16   skills.  You've seen it in action.
17              THE COURT:  I think I've even taught you something
18   about texting and swiping.  Anyway...
19              MR. BAUM:  That's what I'm talking about.
20              Robert M. Baum on behalf of Michael Avenatti.  And I'm
21   joined by my co-counsel, Tamara Giwa.  And I'm also joined by
22   another attorney to my far left, Malini Malhotra, and my
23   paralegal Juliet Vicari.
24              Good morning, your Honor.
25              THE COURT:  Good morning to all of you.  You may be
```

M626AVIS

1    seated.

2           I recently tested negative for COVID-19, and our rules

3    allow me to unmask on the bench, so I will take advantage of

4    that.

5           We're here for purposes of sentencing.  In preparation

6    for today's proceeding, I have reviewed the presentence report

7    dated May 3, 2022.  I've also received and reviewed the

8    following additional submissions:  First, the defendant's

9    submission dated May 19, 2022, as well as the attachments to

10   that submission, which include a DOJ press release, an ABA

11   report of reform of the fraud guideline, letters addressed to

12   me from the defendant's ex-wife, his daughters, his ex-brother

13   and sister-in-law, and a friend; and a letter written by the

14   defendant to Ms. Daniels.  I've also received and reviewed the

15   government's submission dated May 26, 2022.  And for what it's

16   worth, I've also read the transcript of Mr. Avenatti's

17   sentencing before Judge Gardaphe.

18          First, have the parties each received the other's

19   submissions in unredacted form?

20          MR. PODOLSKY:  We have, your Honor.

21          MR. BAUM:  We have, your Honor.

22          THE COURT:  Just to underscore, we have an overflow

23   courtroom, there's also a press feed, so please make sure you

24   speak directly into the microphones to ensure that everybody

25   can hear.

M626AVIS

1          And are there any additional submissions that I should

2     have received?

3          MR. PODOLSKY:  Not from the government, your Honor.

4          MR. BAUM:  Not from the defense, your Honor.

5          THE COURT:  All right.  I have reviewed the proposed

6     redactions to the defense submission.  I find that they are

7     justified on the basis of principally the privacy interests of

8     third parties, and they are narrowly tailored to that

9     justification, so I will approve those.

10         Mr. Podolsky, can you confirm?  My understanding is

11    that Ms. Daniels' lawyer may be here to speak on her behalf; is

12    that correct?

13         MR. PODOLSKY:  That is right.  Mr. Brewster,

14    Clark Brewster, is in attendance, and I believe wishes to relay

15    a statement or a comment from Ms. Daniels.

16         THE COURT:  All right.  And, obviously, that does mean

17    that she has notice of this proceeding.

18         Mr. Brewster, I'll give you an opportunity to be heard

19    later in this proceeding.

20         Turning to the presentence report, Mr. Baum, have you

21    reviewed the presentence report?  Use the microphone.

22         MR. BAUM:  Yes, I have, your Honor.

23         THE COURT:  And have you reviewed it and discussed it

24    with Mr. Avenatti?

25         MR. BAUM:  We have, your Honor.

1          THE COURT:  All right.  And, Mr. Avenatti, have you

2     reviewed the presentence report?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And did you have enough time to go over

5     the report and to discuss with your lawyers anything and

6     everything you would wish to bring to my attention in

7     connection with your sentencing?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  All right.  And, Mr. Baum, I will make the

10    corrections that you request at Pages 11 and 12 of your

11    sentencing submission, to which the government has indicated in

12    Footnote 3 of its submission, does not object.

13         Putting aside those and putting aside the guidelines

14    for a moment, any other objections or corrections?

15         MR. BAUM:  Of course we are prepared to discuss our

16    objections to the guidelines calculation, but there is one

17    additional objection, which, unfortunately, we didn't raise

18    with the Court in our sentencing submission because, at the

19    time, we did not have an opportunity to talk to Mr. Avenatti —

20    he was in transit — until after the sentencing submission was

21    due.

22         We do object to one of the special conditions

23    recommended by probation, and that is the special conditions

24    related to a search.  We are prepared to provide the Court with

25    our reasons.

M626AVIS

1    THE COURT:  All right.  So I'll give you an

2    opportunity to be heard on that.

3        Mr. Podolsky, have you reviewed the presentence

4    report?

5        MR. PODOLSKY:  We have, your Honor.

6        THE COURT:  And putting aside the guidelines, any

7    objections or corrections to the factual recitation?

8        MR. PODOLSKY:  No, your Honor.

9        THE COURT:  Hearing no other objections, I will adopt

10   the factual recitations set forth in the presentence report as

11   modified by the corrections at Pages 11 and 12 of the defense

12   submission.  The presentence report will be made part of the

13   record in this matter and kept under seal.  In the event of an

14   appeal, counsel on appeal may have access to the sealed report

15   without further application to me.

16       Turning, then, to the guidelines.  As counsel are

17   aware, I'm not required to follow the guidelines in the wake of

18   *United States v. Booker*, but I am required to consider the

19   applicable guidelines range in imposing a reasonable sentence,

20   and must, therefore, accurately calculate the sentencing

21   guidelines range.

22       In this case, the presentence report calculates that

23   the total offense level is 21, criminal history category is II,

24   and the guidelines range with the 24-month consecutive sentence

25   required for Count Two is 65 to 75 months' imprisonment,

M626AVIS

1   supervised release range of one to three years, and a fine

2   range of 15,000 to $595,000.

3           That calculation is based, in part, on probation's

4   conclusion that the loss amount for purposes of guidelines was

5   $297,500 based on the third and fourth book payments that were

6   due to Ms. Daniels.

7           I understand in his sentencing submission,

8   Mr. Avenatti objects to that calculation on two grounds; first,

9   on the ground that he made Ms. Daniels whole with respect to

10  the third book payment as the evidence at trial made clear; and

11  second, in essence, based on the costs and expenses that he

12  incurred and the benefits that he allegedly bestowed on

13  Ms. Daniels in connection with his representation of her

14  generally, that, in essence, she got more than he took from

15  her.  I reject both those arguments.  They are both meritless.

16          First, with respect to the first argument about making

17  her whole, it's not clear that he, quote/unquote, returned the

18  money within the meaning of the applicable guideline note,

19  namely 3E(i)(II).  The record at trial made clear that he used

20  the money that he took for his own purposes and paid

21  Ms. Daniels with other funds, which he had borrowed under false

22  pretenses from a third party.  But, ultimately, I need not

23  decide that question, because even if the funds paid could be

24  deemed returned within the meaning of the applicable note, I

25  agree with the government that the evidence at trial was

1    overwhelming, that Mr. Avenatti paid Ms. Daniels the equivalent

2    of the third book payment to forestall her imminent discovery

3    of his crime.

4         See Page 6 of the government's sentencing letter,

5    which marshals some of the relevant evidence at trial.  And,

6    indeed, I think the evidence is clear that that is the only

7    reason Mr. Avenatti paid Ms. Daniels, let alone paid her at

8    that time.

9         The second argument I also find without merit.

10   Mr. Avenatti cites no authority, that I'm aware of, none that

11   supports a view of loss of the sort that he presents.  Indeed,

12   what authority there is points in the opposite direction.  See,

13   for example, *United States v. Byors*, 586 F.3d 222, 226 (2d Cir.

14   2009).

15        So the argument is not supported by law, nor is it

16   supported by logic.  Mr. Avenatti got what he bargained for,

17   and then some.  That is, he used his representation of

18   Ms. Daniels to get fame, notoriety, and money for himself.

19   Indeed, he secured his own book contract worth $2 million.

20   Ultimately, he obviously didn't get paid that.  But no doubt,

21   in large part based on his representation of her, he obtained

22   part of the fee that Mr. Janklow had received without

23   disclosing that to Ms. Daniels, so on and so forth.  In other

24   words, he received substantial remuneration, financially, and

25   through exposure through his representation.

M626AVIS

1          Finally, I would note that there's no merit to the

2     suggestion made in Mr. Avenatti's sentencing memorandum that

3     the government conceded at trial that the loss amount was

4     $148,750.  A review of the relevant transcript page, 1525,

5     makes plain that that suggestion takes the government's comment

6     made as part of a discussion during the charge conference about

7     what would or would not constitute a defense completely out of

8     context.  It's certainly not a concession regarding the loss

9     amount within the meaning of the guidelines, which was

10    obviously not an issue at that stage of the case.

11          Accordingly, for those reasons, I reject the

12    objections to the guidelines calculation that are set forth in

13    the defense submission.

14          The defense makes an additional argument about

15    downward departure under 4A1.3, which I'll address in short

16    order.  But first let me check if there are any other

17    objections or corrections to the guidelines calculations set

18    forth in the presentence report.

19          Mr. Podolsky?

20          MR. PODOLSKY:  No, your Honor.

21          THE COURT:  Mr. Baum?

22          MR. BAUM:  No others, Judge.  But if I may, I'd like

23    to just add some additional arguments, and I will not repeat

24    anything you said --

25          THE COURT:  You need the microphone.  But if it's on

# RE-SENTENCING EXHIBIT 19

HURRELL CANTRALL LLP

700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000
FACSIMILE (213) 426-2020

January 22, 2015

**VIA U.S. MAIL**

Michael Avenatti, Esq.
EAGAN AVENATTI, LLP
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660

John Patrick McNicholas IV, Esq.
McNICHOLAS & McNICHOLAS LLP
10866 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90024

      Re:   **Geoffrey Ernest Johnson vs. Leroy Baca, et al.**
           Case No.   :    CV13-4496 MMM (AJWx)
           Our File No.  :    281-120125-2,41,59

Dear Counselors:

Please find enclosed for your records a copy of the fully executed Settlement Agreement and Release of All Claims in the above-referenced matter. If you have any questions regarding the foregoing, please feel free to contact us.

                    Very truly yours,

                    HURRELL CANTRALL LLP

                    CHARLES PHAN

Enclosure



Exhibit 408
Page 1 of 4

USAO_01143223

## <u>SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS</u>

This Settlement Agreement And Release of All Claims ("Agreement") is entered into between the following parties ("the Parties"): Plaintiff Geoffrey Ernest Johnson ("Plaintiff"), and Defendants County of Los Angeles, Los Angeles Sheriff's Department (also known as the Los Angeles County Sheriff's Department), and Leroy Baca (collectively hereafter, "Defendants").

### RECITALS

Plaintiff filed a civil action against Defendants, entitled *Geoffrey Ernest Johnson v. Leroy Baca, et al.,* Los Angeles County Superior Court Case No. BC493409 ("State Action").

On or about June 21, 2013, Defendants removed the State Action to the United States District Court for the Central District of California with a Case Number of CV-13-4496 MMM (AJWx) (the "Lawsuit").

To avoid the time and expense of further litigation, the Parties desire to resolve their differences and reach an end, compromise, and settlement for all disputes existing and potentially existing between them from the incident giving rise to the Lawsuit.

### AGREEMENT

In consideration of the execution of this Agreement and the releases and promises made in the Agreement by the Parties, the Parties agree as follows:

In exchange for a complete resolution of the Lawsuit, Defendants, by and through the County of Los Angeles, shall pay to Plaintiff **Four Million Dollars ($4,000,000.00)** (the "Settlement Funds"), subject to approval by the Los Angeles County Board of Supervisors. The parties acknowledge that the Court in this matter has issued an order outlining a time table to present this settlement for approval by the Los Angeles County Board of Supervisors, and thereafter issuance of a settlement draft. It is understood by the parties that if the time table is not complied with, this settlement agreement may be revoked by either party.

The Parties expressly agree that the Lawsuit shall not be dismissed until five (5) business days following receipt by Eagan Avenatti of the Settlement Funds as provided above.

The Plaintiff, being of lawful age, does hereby, and for his heirs, executors, administrators, successors and assigns, release, acquit and forever discharge Defendants, as well as their respective agents, servants, successors, heirs, attorney, executors, administrators and all other persons, firms, corporations, associations or partnerships, or any other entity connected therewith, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expense and/or compensation, of any nature whatsoever which the undersigned Plaintiff now has or which may hereafter accrue to the undersigned Plaintiff on account of, or in any way growing out of, any and all known or unknown, foreseen and unforeseen, injuries and/or damages and the consequences thereof resulting from, or to result from, the incidents, casualties or events which occurred or arose while in custody of the Los Angeles County Sheriff's Department from April 2011 through February 2012 in Los Angeles,

Exhibit 408
Page 2 of 4

USAO_01143224

California, and which has resulted in a claim and/or lawsuit being brought by the Plaintiff and against Defendants as described in Case No. CV-13-4496 MMM (AJWx), entitled *Geoffrey Ernest Johnson v. Leroy Baca, et al.,* venued in the United States District Court for the Central District of California.

The Plaintiff agrees that this Agreement extends to any claims which the Plaintiff does not know or suspect to exist in his favor at the time of executing the document, which if known by him may materially affect this settlement. In that regard, the Plaintiff agrees to waive any rights he may have under California *Civil Code* § 1542, which provides as follows: "General release; extent - A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which is known by him must have materially affected his settlement with the debtor." The Plaintiff fully understands that he cannot hereafter make any further claim or seek any further recovery from the parties being released herein by reason of the aforesaid matters, and expressly waives all unknown claims caused by, or alleged to be caused by, the aforesaid Lawsuit.

Plaintiff acknowledges that all liens or other claims of third-parties have been disclosed and agrees to hold harmless and indemnify Defendants, Hurrell Cantrall LLP, and their attorneys and agents, of any and all liens or other claims of third-parties which have been or may be asserted for services which have been or may be rendered on behalf of the Plaintiff.

The Parties agree that they have received no inducement, promise or offer of any kind whatsoever for the consideration delineated hereinabove other than what is stated herein, and that this Agreement is executed without reliance on any statement or representation by those released or their representatives, or anyone, other than the sole consideration described herein.

The Parties agree that no party will be deemed the "prevailing party" for any purpose.

It is understood and agreed that this settlement is the compromise of a disputed claim and that the consideration furnished is not to be construed as an admission of liability on the part of Defendants, and that Defendants have denied liability on the claim herein and intend merely to avoid further litigation by this compromise.

The compromise and settlement which forms the basis of this Agreement have been arrived at after thorough bargaining and negotiation and represents a final, mutually agreeable compromise.

The Parties agree that this Agreement contains the entire agreement between the Parties and that the terms of this Agreement are contractual and not a mere recital.

/ / /

/ / /

/ / /

2 of 3

Exhibit 408
Page 3 of 4

USAO_01143225

The Parties further agree that they have read and fully understand this Agreement, that the opportunity has been afforded to discuss the terms and contents of this Agreement with legal counsel and/or that such a discussion with legal counsel has occurred.  This release may be executed in multiple counterparts, each of which shall be deemed an original, and all of that shall constitute one agreement to be effective on the date of the final signature hereto.

### CAUTION: READ BEFORE SIGNING

DATED: 1/2/15        By: _____
                                   Geoffrey Ernest Johnson, Plaintiff

DATED: 1/21/15       _____
                                   Authorized Representative of the Defendants

This Settlement Agreement and Release of All Claims has been read and approved as to form and content.

DATED: 1-21-15       By: _____
                                   Michael Avenatti, Esq.
                                   Scott Sims, Esq.
                                   Carlos Colorado, Esq.
                                   Eagan Avenatti, LLP
                                   Attorneys for Plaintiff

DATED: 1/21/15       By: _____
                                   Thomas C. Hurrell, Esq.
                                   Charles Phan, Esq.
                                   Rebecca H. Snader, Esq.
                                   Hurrell Cantrall LLP
                                   Attorneys for Defendants

Exhibit 408
Page 4 of 4

USAO_01143226

# RE-SENTENCING EXHIBIT 20

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000
FACSIMILE (213) 426-2020

January 22, 2015

VIA U.S. MAIL

Michael Avenatti, Esq.
EAGAN AVENATTI, LLP
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660

John Patrick McNicholas IV, Esq.
McNICHOLAS & McNICHOLAS LLP
10866 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90024

> Re:   **Geoffrey Ernest Johnson vs. Leroy Baca, et al.**
>       Case No.     :     CV13-4496 MMM (AJWx)
>       Our File No.  :     281-120125-2,41,59

Dear Counselors:

Please find enclosed for your records a copy of the fully executed Settlement Agreement and Release of All Claims in the above-referenced matter. If you have any questions regarding the foregoing, please feel free to contact us.

Very truly yours,

HURRELL CANTRALL LLP

CHARLES PHAN

Enclosure

USAO_00068253

Exhibit 37
Page 1 of 4

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement And Release of All Claims ("Agreement") is entered into between the following parties ("the Parties"): Plaintiff Geoffrey Ernest Johnson ("Plaintiff"), and Defendants County of Los Angeles, Los Angeles Sheriff's Department (also known as the Los Angeles County Sheriff's Department), and Leroy Baca (collectively hereafter, "Defendants").

### RECITALS

Plaintiff filed a civil action against Defendants, entitled *Geoffrey Ernest Johnson v. Leroy Baca, et al.*, Los Angeles County Superior Court Case No. BC493409 ("State Action").

On or about June 21, 2013, Defendants removed the State Action to the United States District Court for the Central District of California with a Case Number of CV-13-4496 MMM (AJWx) (the "Lawsuit").

To avoid the time and expense of further litigation, the Parties desire to resolve their differences and reach an end, compromise, and settlement for all disputes existing and potentially existing between them from the incident giving rise to the Lawsuit.

### AGREEMENT

In consideration of the execution of this Agreement and the releases and promises made in the Agreement by the Parties, the Parties agree as follows:

In exchange for a complete resolution of the Lawsuit, Defendants, by and through the County of Los Angeles, shall pay to Plaintiff **Four Million Dollars ($4,000,000.00)** (the "Settlement Funds"), subject to approval by the Los Angeles County Board of Supervisors. The parties acknowledge that the Court in this matter has issued an order outlining a time table to present this settlement for approval by the Los Angeles County Board of Supervisors, and thereafter issuance of a settlement draft. It is understood by the parties that if the time table is not complied with, this settlement agreement may be revoked by either party.

The Parties expressly agree that the Lawsuit shall not be dismissed until five (5) business days following receipt by Eagan Avenatti of the Settlement Funds as provided above.

The Plaintiff, being of lawful age, does hereby, and for his heirs, executors, administrators, successors and assigns, release, acquit and forever discharge Defendants, as well as their respective agents, servants, successors, heirs, attorney, executors, administrators and all other persons, firms, corporations, associations or partnerships, or any other entity connected therewith, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expense and/or compensation, of any nature whatsoever which the undersigned Plaintiff now has or which may hereafter accrue to the undersigned Plaintiff on account of, or in any way growing out of, any and all known or unknown, foreseen and unforeseen, injuries and/or damages and the consequences thereof resulting from, or to result from, the incidents, casualties or events which occurred or arose while in custody of the Los Angeles County Sheriff's Department from April 2011 through February 2012 in Los Angeles,

USAO_00068254

Exhibit 37
Page 2 of 4

California, and which has resulted in a claim and/or lawsuit being brought by the Plaintiff and against Defendants as described in Case No. CV-13-4496 MMM (AJWx), entitled *Geoffrey Ernest Johnson v. Leroy Baca, et al.*, venued in the United States District Court for the Central District of California.

The Plaintiff agrees that this Agreement extends to any claims which the Plaintiff does not know or suspect to exist in his favor at the time of executing the document, which if known by him may materially affect this settlement. In that regard, the Plaintiff agrees to waive any rights he may have under California *Civil Code* § 1542, which provides as follows: "General release; extent - A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which is known by him must have materially affected his settlement with the debtor." The Plaintiff fully understands that he cannot hereafter make any further claim or seek any further recovery from the parties being released herein by reason of the aforesaid matters, and expressly waives all unknown claims caused by, or alleged to be caused by, the aforesaid Lawsuit.

Plaintiff acknowledges that all liens or other claims of third-parties have been disclosed and agrees to hold harmless and indemnify Defendants, Hurrell Cantrall LLP, and their attorneys and agents, of any and all liens or other claims of third-parties which have been or may be asserted for services which have been or may be rendered on behalf of the Plaintiff.

The Parties agree that they have received no inducement, promise or offer of any kind whatsoever for the consideration delineated hereinabove other than what is stated herein, and that this Agreement is executed without reliance on any statement or representation by those released or their representatives, or anyone, other than the sole consideration described herein.

The Parties agree that no party will be deemed the "prevailing party" for any purpose.

It is understood and agreed that this settlement is the compromise of a disputed claim and that the consideration furnished is not to be construed as an admission of liability on the part of Defendants, and that Defendants have denied liability on the claim herein and intend merely to avoid further litigation by this compromise.

The compromise and settlement which forms the basis of this Agreement have been arrived at after thorough bargaining and negotiation and represents a final, mutually agreeable compromise.

The Parties agree that this Agreement contains the entire agreement between the Parties and that the terms of this Agreement are contractual and not a mere recital.

/ / /

/ / /

/ / /

2 of 3

USAO_00068255

Exhibit 37
Page 3 of 4

The Parties further agree that they have read and fully understand this Agreement, that the opportunity has been afforded to discuss the terms and contents of this Agreement with legal counsel and/or that such a discussion with legal counsel has occurred. This release may be executed in multiple counterparts, each of which shall be deemed an original, and all of that shall constitute one agreement to be effective on the date of the final signature hereto.

### CAUTION: READ BEFORE SIGNING

DATED: 1/2/15

By: _____
Geoffrey Ernest Johnson, Plaintiff

DATED: 1/21/15

_____
Authorized Representative of the Defendants

This Settlement Agreement and Release of All Claims has been read and approved as to form and content.

DATED: 1-21-15

By: _____
Michael Avenatti, Esq.
Scott Sims, Esq.
Carlos Colorado, Esq.
Eagan Avenatti, LLP
Attorneys for Plaintiff

DATED: 1/21/15

By: _____
Thomas C. Hurrell, Esq.
Charles Phan, Esq.
Rebecca H. Snader, Esq.
Hurrell Cantrall LLP
Attorneys for Defendants

USAO_00068256

Exhibit 37
Page 4 of 4